**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

MASSEY ENERGY COMPANY, et al.,

                Plaintiffs,

v.                                  CIVIL ACTION NO. 2:09-cv-00029

AMERICAN INTERNATIONAL SPECIALTY
LINES INSURANCE COMPANY, et al.,

                Defendants.

**MEMORANDUM OPINION & ORDER**

This lawsuit was filed by Massey Energy Company ("Massey Energy"), Central West Virginia Energy Company ("CWVEC"), and A.T. Massey Coal Company, Inc. ("A.T. Massey") (collectively, "Massey" or "the plaintiffs"). The plaintiffs seek a declaration that the defendants are obligated to indemnify Massey for damages paid by Massey to Wheeling Pittsburgh Steel Corporation and Mountain State Carbon, LLC (collectively, "Wheeling Pitt") after the Circuit Court of Brooke County entered judgment against Massey on August 2, 2007 (the "Underlying Judgment"). The defendants are four of Massey's insurers: American International Specialty Lines Insurance Company ("AISLIC"), XL Insurance Company Limited (Irish Branch) ("XL"), HDI-Gerling Industrie Versicherungs AG ("Gerling"), and SR International Business Insurance Company Ltd. ("SRI") (collectively, "the defendants").

Pending before the court are SRI's Motion to Dismiss or, in the Alternative, Stay Proceedings [Docket 6], XL's Motion to Dismiss, Stay or Transfer Plaintiffs' Complaint [Docket 10], Gerling's Motion to Dismiss [Docket 12], Massey's Motion to Remand [Docket 22], Massey's

Motion for Leave to Serve Discovery [Docket 51], and Massey's Motion Requesting Oral Argument on Motion to Remand [Docket 54]. All the motions are now ripe for review. For the reasons explained below, Massey's Motion for Leave to Serve Discovery, Motion Requesting Oral Argument, and Motion to Remand are **DENIED**. Furthermore, the defendants' Motions to Dismiss [Dockets 6, 10, and 12] are **DENIED**. Finally, due to exceptional circumstances requiring the court to abstain from going forward with this matter, this action is ordered **STAYED** in accordance with this opinion.

## I. Background

As noted above, this procedurally complex case arises out of an Underlying Judgment against Massey in the Circuit Court of Brooke County. *See Wheeling Pittsburgh Steel Corp. v. Cent. W. Va. Energy Co.*, No. 05-C-85-MJG. In the Underlying Judgment, the court entered a judgment against Massey in the amount of $243,903,699, which included $100 million in punitive damages. (SRI Mot. Dismiss 4 & Ex. C.) In response to this Underlying Judgment, a dispute arose between Massey and the defendants regarding indemnification. The defendants denied that they were required to indemnify Massey on the Underlying Judgment and between November 21 and 24, 2008 they all filed Demands for Arbitration against Massey under the terms of their various agreements. (XL Mem. Opp'n Pls.' Mot. Remand 2 [Docket 45].) "All of those arbitration proceedings are currently proceeding before the [American Arbitration Association]" and Massey "has never made any application to stay the arbitration[.]" (SRI Mem. Opp'n Pls.' Mot. Remand 6 [Docket 39].) Gerling also filed a lawsuit on November 21, 2008 seeking a declaratory judgment in Virginia Circuit Court, City of Richmond. *See HDI-Gerling Indus. Versicherung AG v. A.T. Massey Coal*

*Co., Inc.*, Case No. 760CL08005513-00 (the "Virginia Action"). The Virginia Action filed by Gerling is against Massey and the other defendants.

On December 15, 2008, Massey filed the instant declaratory judgment action in the Circuit Court of Mingo County (the "State Court Action"). Massey alleges that the defendants each sold an insurance policy to Massey that collectively provide a total of $90 million of insurance coverage over the time period relevant to the Underlying Action. (Mem. Supp. Mot. Remand 2 [Docket 23].) Specifically, Massey asserts that "[t]he AISLIC policy is the first-layer umbrella policy, and has limits of $15 million excess of a $10 million retention. The XL, Gerling, and SRI policies are excess liability policies, each with $25 million in limits." (*Id.*) Massey seeks a declaration that the defendants are obligated to indemnify Massey for the damages paid by Massey in the Underlying Action.

On January 13, 2009, SRI removed the State Court Action to this court. In its Notice of Removal, SRI declared that it "obtained the written consent of all party defendants to remove the State Court Action . . . ." (Notice Removal 2 [Docket 1].) On January 14, 2009, AISLIC filed a petition to compel arbitration in the U.S. District Court for the Eastern District of Virginia, and also, on January 26, 2009, filed a consent for removal in this action [Docket 4]. XL filed a similar consent for removal [Docket 9] on January 26, 2009. On February 2, 2009, Gerling filed a Response to Notice of Removal [Docket 14], in which it consented to removal to this court while explicitly retaining the right to challenge the insufficiency of the service of process, among other things.

## II. Discussion

The merits of the lawsuit are not currently before the court. Rather, the Motion to Remand and the various Motions to Dismiss raise a number of jurisdictional and venue related issues. I will address each motion below.

### A. Massey's Motion to Remand, Motion for Discovery, and Motion for Oral Argument

Massey asserts in its Motion to Remand that this case should be remanded to the Circuit Court of Mingo County because Gerling is contractually prohibited from consenting to removal and therefore SRI's Notice of Removal is defective.[1] Specifically, Massey points to a Cover Note of its insurance policy with Gerling that sets forth requirements for disputes as follows:

> Any dispute concerning the interpretation of the terms, conditions, limitations and/or exclusions contained herein, is understood and agreed by both the Insured and Underwriters to be subject to United States of America law. Each party agrees to submit to the jurisdiction of any court of competent jurisdiction within the United States of America and to comply with all requirements necessary to give such court jurisdiction. All matters arising hereunder shall be determined in accordance with the law and practice of such court.

(Massey Mem. Supp. Mot. Remand 3.) Massey argues that this language in the Cover Note binds Gerling to submit to the jurisdiction of any court in the United States that Massey chooses. (*Id.*)

---

[1] In its Motion to Remand, Massey also asserts that the court lacks jurisdiction to hear the case because the parties are not completely diverse. Massey initially argued that AISLIC was not an Illinois corporation, as claimed by SRI, and that discovery was needed to determine AISLIC's actual place of incorporation and principle place of business. In its response, SRI provided clear argument and documentation asserting that AISLIC is, in fact, an Illinois corporation with its principle place of business in Illinois. In reply, Massey stated that "SRI has produced evidence to support its contention that there is complete diversity and, accordingly, Massey withdraws its challenge on those grounds." (Pls.' Reply Defs. Gerling & SRI Opp'n Mot. Remand 2 [Docket 50].) Even though Massey has withdrawn its jurisdictional challenge, I must confirm this court's jurisdiction over the instant matter, because the court cannot entertain this case without proper jurisdiction. Accordingly, I have reviewed the pertinent documents and determined that the parties in this matter are completely diverse and the court has jurisdiction pursuant to 28 U.S.C. § 1332.

Massey cites to a Fifth Circuit case that addressed language similar to the language contained in the Cover Note to support its contention that Gerling cannot consent to removal in this case.[2] *See City of Rose City v. Nutmeg Ins. Co.*, 931 F.2d 13, 14 (5th Cir. 1991). In that case, the contractual provision at issue stated, in part:

> [I]n the event of [Nutmeg's] failure to pay any amount claimed to be due under [Rose City's] policy, [Nutmeg], at [Rose City's] request agree to submit to the jurisdiction of any Court of Competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

*Id.* The Fifth Circuit held that because "there was no question that Nutmeg would have to submit to the jurisdiction of some court in the United States[,]" Nutmeg had "promised [in the above quoted clause] to submit to the jurisdiction of *any* Court . . . within the United States." *Id.* at 15-16 (internal quotations omitted). The Fifth Circuit relied on the fact that Nutmeg was a Connecticut corporation to distinguish its case from other cases where similar clauses were deemed to be forum selection clauses only requiring foreign companies to be subject to the jurisdiction of *some* court in the United States. *Id.* at 15 (distinguishing *In re Delta Am. Re Ins. Co.*, 900 F.2d 890 (6th Cir. 1990)). The Fifth Circuit determined that since Nutmeg was a domestic company, the clause must do more than bind the parties to the courts of the United States. *Id.* The Fifth Circuit, therefore, interpreted the clause to mean that Nutmeg had agreed to entertain a lawsuit in the court of Rose City's choosing and, accordingly, held that Nutmeg waived its right to remove the case to federal court. *Id.* at 16.

---

[2] Massey cited to other cases to support this argument as well. *See Capital Bank & Trust Co. v. Associated Int'l Ins. Co.*, 576 F. Supp. 1522, 1524 (M.D. La. 1984); *Perini Corp. v. Orion Ins. Co., Ltd.*, 331 F. Supp. 453, 455 (E.D. Cal. 1971); *Gen. Phoenix Corp. v. Malyon*, 88 F. Supp. 502, 503 (S.D.N.Y. 1949).

SRI, Gerling, and XL each responded to the Motion to Remand and made similar arguments regarding Gerling's consent to removal. Specifically, the defendants argue that removal was proper for three reasons: (1) the Cover Note that Massey relies upon was not actually in the policy under which Massey seeks indemnification; (2) even if the Cover Note was in the policy, it does not waive Gerling's rights because it is permissive and reciprocal; and (3) Gerling's consent for removal is not required because the necessary service of process was not effected upon Gerling.

For the sake of judicial efficiency, I will adopt Massey's assumption that the Cover Note is part of the policy in my analysis of this motion and address the defendants' second argument, which I find to be dispositive. Gerling argues that Fourth Circuit precedent requires a clear and unequivocal waiver of removal rights in order for a party to be barred from removing a case to federal court. The Fourth Circuit cases that Gerling relies on, however, discuss whether a party, through action taken in the state court case prior to removal, waived its right to remove. *See Grubb v. Donegal Mut. Ins. Co.*, 935 F.2d 57, 59 (4th Cir. 1991); *Westwood v. Frank*, 177 F. Supp. 2d 536, 541 (N.D. W. Va. 2001) (filing a permissive cross-claim in state court shows a clear and unequivocal intent to waive the right to removal). Such a waiver is not at issue in this case. Rather, the issue in this case is whether the terms of the Cover Note contractually bind Gerling to accept the jurisdiction of the state court and preclude it from consenting to removal. Nevertheless, Gerling is correct that the terms of the Cover Note must provide a clear and unequivocal waiver of removal rights in order to prohibit it from consenting to removal. *See, e.g.*, *Cont'l Cas. Co. v. Lasalle Re Ltd.*, 500 F. Supp. 2d 991, 995 (N.D. Ill. 2007) ("A general consent to the jurisdiction of a particular court does not, however, adqueately demonstrate a waiver of defendant's statutory right to remove.").

My decision on this motion rests primarily on my interpretation of the Cover Note. In order to determine whether Gerling waived its removal rights through the Cover Note, I must determine whether the Cover Note clearly and unequivocally mandates the resolution of disputes in a particular forum. In other words, I must determine if the Cover Note contains a forum selection clause and if so, whether the clause is permissive or mandatory. *See, e.g.*, *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994) (noting that the court must determine whether a forum selection clause is mandatory or permissive in order to discern if a particular forum is required). "Forum selection clauses are deemed permissive when they merely consent to jurisdiction and empower a court to hear the litigation." *McWilliams, Murphy & Assoc., Inc. v. Heart & Vascular Clinic of N. Colo.*, No. 1:08CV361, 2008 WL 4933956, at *2 (M.D.N.C. Nov. 14, 2008). "In order to constitute a mandatory forum selection clause, words must be used which have some compulsory or obligatory language directing that the disputes will be resolved in a particular court or court system." *Id.*

I **FIND** that the Cover Note's language stating "[e]ach party agrees to submit to the jurisdiction of any court of competent jurisdiction within the United States of America and to comply with all requirements necessary to give such court jurisdiction" constitutes a permissive forum selection clause because no specific court in the United States is named, but rather any "court of competent jurisdiction" is appropriate. In effect, the clause "merely waive[s] any objection to personal jurisdiction in a particular venue." *Id.* Accordingly, the Cover Note does not amount to a waiver of Gerling's right to remove.

Massey's reliance on *City of Rose City* is misplaced. First, the contractual language at issue in *City of Rose City* is different from the language at issue in this case. Specifically, in *City of Rose City* the relevant contractual language was "we, at your request agree." *City of Rose City*, 931 F.2d

at 14. Through that language the insurance company specifically agreed to submit to the jurisdiction of Rose City's choosing. *See id.* On the other hand, Gerling's Cover Note quite clearly binds *both* parties to submit to the jurisdiction of a court in the United States when it says "[e]ach party agrees." The Cover Note, therefore, is not an agreement by Gerling to submit to the jurisdiction of Massey's choosing, but rather an agreement by both parties to submit to a court of competent jurisdiction in the United States.

Second, the fact that the defendant insurance company was a United States corporation was crucial to the holding in *City of Rose City*. The court stated "Nutmeg is a Connecticut corporation . . . [and i]t would have made no sense for a policyholder to bargain with Nutmeg for a clause requiring only that Nutmeg would submit to the jurisdiction of some court in the United States." *Id.* at 15-16. That conclusion is inapplicable to the pending case, because Gerling is a foreign corporation. Unlike in *City of Rose City*, it would make perfect sense for the parties in this case to have bargained for a clause requiring Gerling to submit to a court in the United States.

Furthermore, as Gerling argues, courts that have interpreted reciprocal language, such as that in the Cover Note, do so in a much different manner than *City of Rose City* and the other cases that Massey cites for support. Gerling cites to a case in the Northern District of West Virginia addressing policy language binding both parties to "submit to the jurisdiction of any court of competent jurisdiction within the United States . . . ." *Mass. Mut. Life Ins. v. Factory Mut. Ins. Co.*, No. 3:05-CV-69, 2007 WL 3273452, at *1 (N.D. W. Va. Nov. 2, 2007). The policy in that case further stated that each party "will comply with all of the requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court[.]" *Id.* The court determined that the case could be transferred to another district court

because the case "could have been brought in *any* district court across the nation" and "this Court should seek to consider 'all other practical problems that make trial of a case easy, expeditious, and inexpensive.'" *Id.* at 3 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Accordingly, such permissive reciprocal language does not require the action to proceed in the court of its original filing.

Finally, I note that because the Cover Note does not explicitly give Massey a right to choose the jurisdiction for any dispute, but rather states that "[e]ach party agrees to submit to the jurisdiction of any court of competent jurisdiction within the United States of America . . . ." Therefore, to the extent that the Cover Note serves to bind Gerling to the State Action filed by Massey, it would equally bind Massey to the Virginia Action filed by Gerling weeks before.

I **FIND** that Gerling did not, through the Cover Note, clearly and unequivocally waive its right to consent to removal. Accordingly, Massey's Motion to Remand [Docket 22] is **DENIED**.[3]

### B. Defendants' Motions to Dismiss, Stay, or Transfer

I will now address SRI's Motion to Dismiss or, in the Alternative, Stay Proceedings [Docket 6], XL's Motion to Dismiss, Stay or Transfer Plaintiffs' Complaint [Docket 10], and Gerling's Motion to Dismiss [Docket 12]. SRI argues that this action should be dismissed (1) pursuant to Federal Rule of Civil Procedure 12(b)(3) because the case pending in Virginia is a more proper venue, particularly since it was filed first; (2) on *forum non conveniens* grounds because Virginia

---

[3] I note that Massey requested discovery prior to the parties' Rule 26(f) conference on the issue of whether the parties intended Gerling's Cover Note to be part of the Gerling policy. (Massey Reply Defs.' Gerling & SRI Opp'n Mot. Remand 6 [Docket 50]; Massey Mot. Leave Serve Disc. [Docket 51].) Because I conclude that this issue can be resolved without discovery, Massey's Motion for Leave to Serve Discovery [Docket 51] is **DENIED**. Furthermore, because I **FIND** that oral argument is unnecessary to decide the motion to remand, Massey's Motion Requesting Oral Argument on Motion to Remand [Docket 54] is also **DENIED**.

state court is a more appropriate forum; and (3) pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because the issues should be resolved via arbitration. In the alternative, SRI argues that each of its reasons for dismissal require that this court should at least stay the proceedings. XL, in turn, argues that this action should be dismissed (1) pursuant to Section 3 of the Federal Arbitration Act because the issues presented are arbitrable and (2) for improper venue pursuant to Rule 12(b)(3) because the arbitration clause specifies New York as the proper location for arbitration. In the alternative, XL argues that the court should stay or transfer this case for the same reasons. Gerling argues that this action should be dismissed (1) because service of process on Gerling was improper; (2) pursuant to Rule 12(b)(3) because the issues in this case are already pending in a more appropriate forum in the Virginia Action; and (3) pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because the proper place for the dispute is in arbitration as required by the arbitration provision of the policy.

Although each party moved for dismissal on varying grounds, one common issue raised in all of their motions is whether this court is the appropriate forum to resolve the dispute at issue. The motions to dismiss collectively present two arguments for why this court is not the appropriate forum: (1) the Virginia Action was filed first and therefore the action should be dismissed in order to allow the first filed case to proceed; and (2) the agreements between Massey and the defendants contain arbitration clauses and, accordingly, this case should be dismissed in favor of the already pending arbitration or some future arbitration. Under the first argument, the defendants state that the Virginia Action was filed first in time and is also more comprehensive because it contains references to the potential arbitration that Massey did not raise in this case. Furthermore, the defendants argue that Virginia is the more appropriate venue because Massey is headquartered in

Virginia and all correspondence and dealings between the defendants and Massey occurred through Massey's Virginia office. Secondly, the defendants assert that the insurance contracts contain arbitration clauses that requires disagreements under the policies to be submitted to binding arbitration. Accordingly, the defendants argue, I should dismiss this action because Massey should submit to arbitration under the terms of the contracts and, therefore, cannot state a claim for relief in this case.

Massey responded to these arguments thoroughly. Massey contends that the first in time doctrine in federal court only applies when there are two *federal* court cases pending and here the case filed before this federal court case is in state court. Massey further contends that even if the first in time doctrine does apply, I should not dismiss this case because the Virginia Action was anticipatory forum shopping. Massey also argues that West Virginia is the more appropriate venue because all the events leading to the Underlying Judgment occurred in West Virginia and because this case is more comprehensive than the Virginia Action. Furthermore, Massey asserts that the insurance policies at issue "were issued to Massey through an insurance broker's office in West Virginia." (Aff. M. Shane Harvey ¶ 9.) As to arbitration being appropriate, Massey argues that Section 3 of the Federal Arbitration Act does not allow for dismissal, but rather only authorizes a stay of proceedings. Nevertheless, Massey asserts that a stay is not appropriate because this case includes extra-contractual claims that are not arbitrable, including Massey's West Virginia Unfair Trade Practices Act claims.

In reply, the defendants argue that the first filed rule applies regardless of whether the two cases are both in federal court or if one is in federal court and one is in state court. SRI specifically argues that the Virginia Action was not anticipatory forum shopping because SRI is a defendant and

did not commence the lawsuit. Furthermore, SRI asserts that the Virginia Action was not anticipatory forum shopping by any of the defendants because there is no evidence that Gerling had knowledge that Massey was about to commence another action against them in another forum, particularly because Massey's case was filed weeks after the Virginia Action. The defendants also argue that the insurance companies dealt with Massey exclusively through Massey's Virginia office and that the dispute is a contractual dispute under the insurance policies. Finally, the defendants assert that Virginia is a more appropriate venue because the facts of the Underlying Judgment are not relevant to the interpretation of the policies in any way that would make West Virginia an appropriate venue.

Although many arguments have been raised, the primary issue I will consider is whether a West Virginia federal court or the Virginia state court is the more appropriate forum for this case. Massey correctly notes that the first in time doctrine, or the first-to-file doctrine is inapplicable in this case. "The first-to-file doctrine applies to concurrent federal litigation—not concurrent state/federal litigation." *Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462, 473 (S.D.N.Y. 2001). Rather, the standard for when federal courts should defer to state actions was set forth by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). None of the parties argued that this court should abstain under the *Colorado River* doctrine. Nevertheless, I will address that doctrine *sua sponte* to determine whether it is appropriate for this court to abstain in favor of the Virginia Action. *See Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976) (noting that "abstention may be raised by the court [s]ua sponte"); *Prentiss v. Allstate Ins. Co.*, 87 F. Supp. 2d 514, 517 (W.D.N.C. 1999) ("The decision to abstain from exercising otherwise proper jurisdiction may and should be raised by the Court *sua sponte*.").

As a preliminary matter, I note that "[a] district court has a duty to adjudicate a controversy properly before it: 'Abstention from the exercise of federal jurisdiction is the exception, not the rule.'" *New Beckley Mining Corp. v. Int'l Union, U.M.W.A.*, 946 F.2d 1072, 1073 (4th Cir. 1991) (quoting *Colo. River Water Conservation Dist.*, 424 U.S. at 813). "The threshold question in deciding whether *Colorado River* abstention is appropriate is whether there are parallel federal and state suits." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley*, 946 F. Supp. at 1073. Furthermore, "the existence of proceedings in state court does not by itself preclude parallel proceedings in federal court" because this court has "a duty to adjudicate a controversy properly before it . . . ." *Id.* at 1073 (quoting *Colorado River*, 424 U.S. at 813). This case and the Virginia Action include exactly the same parties. Furthermore, this suit and the Virginia Action involve almost identical issues regarding the interpretation of the same policies. Accordingly, I **FIND** that this action and the Virginia Action are parallel suits.

This is not the end of my inquire, however. As the Fourth Circuit explained:

> Although the decision to dismiss a federal suit because of parallel state-court litigation does not rest on a checklist, . . . six factors have been identified to guide the analysis: (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*Great American Ins. Co. v. Gross*, 468 F.3d 199, 207-08 (4th Cir. 2006). I will now address each of the six factors and determine whether abstention is appropriate in this case.

### 1. There Is No Property Involved In This Dispute

The first factor weighs against abstention because there is no tangible property involved. Rather, this case involves a contract dispute over the terms of insurance policies.

### 2. This Court Is Less Convenient Than Virginia State Court

An adjudication of this matter in Virginia state court is more convenient than in the United States District Court of the Southern District of West Virginia for a number of reasons. First, three of the defendants in this case are foreign corporations with little or no connection to West Virginia. On the other hand, the defendants' connection to Virginia is much greater because they have been communicating and doing business with Massey in Virginia through Massey's Virginia headquarters. Second, Massey would not be inconvenienced by the Virginia Action because Massey is incorporated in Virginia and has its principle place of business in Virginia. Furthermore, contrary to Massey's assertions, this dispute is one arising out of the terms of the insurance policies between Massey and the defendants and not out of the facts of the Underlying Judgment in West Virginia.

### 3. Avoiding Piecemeal Litigation is Important

While it is always important for judicial economy to avoid piecemeal litigation, those concerns are especially crucial in this case. "The threat of inconsistent results and the judicial inefficiency inherent in parallel . . . litigation, however, are not enough to warrant abstention." *Gannett Co., Inc. v. Clark Const. Group, Inc.*, 286 F.3d 737, 744 (4th Cir. 2002). "Instead, for abstention to be appropriate, retention of jurisdiction must create the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation, or the litigation must be particularly illsuited for resolution in duplicate forums." *Id.* Such additional inefficiencies and inconsistencies are present here. In addition to this case and the Virginia Action, there is also an arbitration

underway and a suit in the Eastern District of Virginia that seeks to compel arbitration. The obvious problems of piecemeal litigation are enhanced in this case by the multitude of actions addressing the same issues. There is a legitimate possibility that the arbitration panel and the state and federal courts will make conflicting decisions on important issues in this dispute. Furthermore, the issues in the Virginia Action and those in this case are not pieces of a larger litigation, but are nearly identical. To allow both cases to continue would be extremely inefficient.

### 4. The Virginia Action Was Filed First-In-Time

The Virginia Action was filed on November 21, 2008 and the arbitration was initiated around the same time. This action, however, was not filed until December 15, 2008, over three weeks later. Furthermore, this action did not arrive in federal court until January 13, 2009, almost two months after the Virginia Action was filed. This is not a situation where both cases were filed simultaneously or even a day apart. *See id.* at 748. Rather, the Virginia Action has a nearly two month head start on this action and the Virginia court is undoubtedly more familiar with the issues after the hearing held in that action in March.

### 5. State Law Provides The Rule Of Decision On The Merits

Massey raises four claims in this case, none of which raise any issue of federal law. First, Massey seeks a declaratory judgment on the defendants' duty to indemnify. Second, Massey sues the defendants for breach of contract. Third, Massey alleges that the defendants' breached their duty of good faith and fair dealing. Fourth, Massey alleges that the defendants violated West Virginia's Unfair Trade Practices Act. Although the fourth claim does not involve federal law, it is a claim under West Virginia law, not Virginia law. Nevertheless, Massey could bring this claim as a counter-claim in the Virginia Action.

### 6. The Virginia Action Is Adequate To Protect The Plaintiffs' Rights

Although Massey chose to file this case in West Virginia, a Virginia state court is fully capable of protecting its rights. As noted above, Massey is a Virginia corporation. Massey surely made this decision purposefully and with the expectation that it would defend lawsuits in Virginia state courts. There is no reason why the Virginia state court would inadequately protect the rights of a corporation from its own state.

In reviewing the six factors, five of the relevant factors weigh toward abstention in this case and allowing the first filed Virginia Action to move forward to determine these issues. The only reasons not to abstain in this case are Massey's fourth claim under West Virginia law and the fact that there is no property involved in this case. I cannot find that this state law claim, which could still be raised in the Virginia Action, is sufficient to allow this suit to continue along with the parallel Virginia Action. Importantly, it is unclear whether the defendants' business contained the required connection to West Virginia to support the state law claim. *See, e.g.*, *M&S Partners v. Scottsdale Ins. Co.*, 277 Fed. Appx. 286, 290 (4th Cir. 2008) (finding that an unfair trade practices claim should not move forward under West Virginia law because the defendant did not have enough of a connection with West Virginia). Furthermore, the lack of property involved is not enough to make abstention inappropriate. *See, e.g.*, *Sto Corp. v. Lancaster Homes, Inc.*, 11 Fed. Appx. 182 (4th Cir. 2001) (affirming a district court abstention where property was not involved and the federal court was equally as convenient as the state court). Accordingly, there is no reason for this court to retain jurisdiction concurrently with the Virginia state court and, in fact, the factors compel me to abstain under these exceptional circumstances. Although federal courts should not abstain often, I **FIND**

that this is one of those rare times where abstention is the proper course due to the exceptional circumstances at hand. *See id* at 189.

After determining that abstention is the proper course, I must now decide whether to dismiss the action or stay proceedings. *See Kelser v. Anne Arundal County Dep't of Soc. Serv.*, 679 F.2d 1092, 1094 (4th Cir. 1982) ("That abstention was proper at that time does not however justify the district court's decision to dismiss the action rather than stay proceedings and retain it on the docket.") "A federal court abstaining on *Colorado River* grounds should dismiss the case if 'the determinative issues will unfailingly be resolved within the parameters of the state-court litigation . . . as no further action by the district court is anticipated. However, if the federal case has a chance of continuing even after the resolution of the state case, a stay pending the resolution of the state suit is the appropriate disposition . . . ." *Sto Corp.*, 11 Fed. Appx. at 189 (quoting *Cox v. Planning Dist. I Cmty. Mental Health & Mental Retardation Servs. Bd.*, 669 F.2d 940, 943 (4th Cir. 1982)). Although unlikely, it is possible that the Virginia state court could preclude Massey from bringing its West Virginia Unfair Trade Practices counterclaim *and* that those claims will be deemed inappropriate for arbitration. If those results occurred, then there will be reason for this court to take up the sole issue of Massey's Unfair Trade Practices claim. Accordingly, a stay pending the result of the Virginia Action is appropriate in order to avoid any potential expiration of the applicable statute of limitations. *See id.* at 190.

### III. Conclusion

For the reasons discussed above, SRI's Motion to Dismiss or, in the Alternative, Stay Proceedings [Docket 6], XL's Motion to Dismiss, Stay or Transfer Plaintiffs' Complaint [Docket 10], Gerling's Motion to Dismiss [Docket 12], Massey's Motion to Remand [Docket 22], Massey's

Motion for Leave to Serve Discovery [Docket 51], and Massey's Motion Requesting Oral Argument on Motion to Remand [Docket 54] are all **DENIED**. Having *sua sponte* considered whether abstention is appropriate in this case pursuant to the *Colorado River* doctrine, I **FIND** that exceptional circumstances exist and that I must abstain from continuing with this action in favor of the parallel Virginia Action. Accordingly, this case is **ORDERED STAYED** pending the resolution of the Virginia Action.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                              ENTER:      April 16, 2009

*[Signature]*
Joseph R. Goodwin, Chief Judge